## Case No. 12,776.

SHERWOOD v. GENERAL MUT. INS. CO.

[1 Blatchf. 251;[1] 5 N. Y. Leg. Obs. 406; 18 Hunt, Mer. Mag. 186.]

Circuit Court, S. D. New York. Dec. 4, 1847.

MARINE INSURANCE — PERILS OF THE SEA — DAMAGES PAID IN COLLISION.

1. A policy of insurance against "the perils of the sea," comprehends the damages paid by the insured vessel to another, in consequence of a collision between them at sea.

2. And the underwriters are liable in such case, even though the collision is produced through negligence and misconduct on the part of the insured vessel.

[Cited in Nelson v. Suffolk Ins. Co., 8 Cush. 504.]

3. The damages sustained by the injured vessel are the direct and immediate consequence of the collision, and no less so in being imposed by judgment of law on the insured vessel, than if they had accrued to her bodily by the collision.

4. And the policy covers not only the immediate damages occasioned by the collision, but the costs and expenses incurred in a suit brought to recover those damages.

5. It also covers counsel fees, beyond taxable costs, paid by the insured vessel in such suit.

6. The claim on the policy in such case is for indemnity, and the defence in the suit against the insured vessel is *held* to have been for the benefit of the insurer.

After the decision in the case of The Emily [Case No. 4,452] the claimant [Ebenezer B. Sherwood] brought an action in this court against the insurers of the Emily, to recover the amount so decreed against that vessel, he having paid it.

Francis B. Cutting, for plaintiff.

Theodore Sedgwick and Alexander Hamilton, Jr., for defendants.

BETTS, District Judge. The declaration in this case is very special, setting forth all the facts upon which the action is grounded, or which might probably be brought out on the defence. The brig Emily, owned by the plaintiff, was underwritten by the defendants, amongst other risks, against "the perils of the sea." Before the termination of the voyage, and at sea off the port of New-York, she came in collision with the schooner Virginian, by which the latter vessel was sunk, and, with her cargo, totally lost. A suit in rem was prosecuted, in the district court for this district, by the owners of the Virginian against the Emily, to recover the damages sustained by occasion of the collision. The court held, that there was negligence and misconduct in the management and navigation of the Emily, and decreed against her $6,000 for damages sustained by the Virginian, besides costs of suit. This decree was affirmed on appeal to the circuit court, and the present action on the policy of insurance seeks to recover from

the defendants the amount so decreed against the Emily, and which the plaintiff avers he has paid and satisfied.

The defendants demur to the first and second counts of the declaration, which detail these facts, and the issues at law presented upon the pleadings are: 1. Whether a policy against "the perils of the sea" comprehends the damages paid by the insured vessel to another in consequence of a collision between them at sea; 2. Whether the underwriters on such policy are liable, when the collision is produced through negligence and misconduct on the part of the insured vessel.

These points have been argued with great fulness and ability, and with a critical examination of the principles recognized in the American and English courts, and the maritime codes of Europe, on the subject. We think both questions are embraced within decisions rendered by the supreme court, and that they are not now open for consideration by this court on general principles, and accordingly we shall restrict the discussion in this opinion, to a very concise statement of our views of the effect and bearing of the cases decided by the supreme court.

In the first place, we understand it to be explicitly settled in the case of Peters v. Warren Ins. Co., 14 Pet. [39 U. S.] 99, that a vessel insured against the perils of the sea is entitled to be remunerated under the policy, to the extent of the contributions she has been obliged to make for injuries to another vessel in consequence of a collision at sea between the two. That is the general doctrine. The court also determined that the policy covered not only the immediate damages occasioned by the collision, but the costs and expenses incurred in enforcing the contribution.

That case disposed of another point supposed on the part of the defendants in this case to merit great consideration. It was emphatically declared that the proximate cause of loss was the collision, and not the adjudication of the tribunal attaching the loss to the insured vessel, or the lex loci establishing her liability. The objection raised on the argument before us, that the loss was not within the perils insured against, because it was imposed upon the Emily immediately by the decrees of the district and circuit courts, condemning her in damages and costs, and that her exposure to litigation could not, in the event of such litigation, be deemed a peril of the sea, is, therefore, precisely met and answered by that case. We accordingly regard the first proposition raised by the demurrers as fully covered by the decision of the supreme court, and no longer a subject of discussion.

The point, however, most relied upon by the defendants is, that by the commercial law of the United States and of the continental states of Europe, underwriters on a marine policy are not liable for a loss pro-

[1] [Reported by Samuel Blatchford, Esq., and here reprinted by permission.]

duced by the carelessness, ignorance or misconduct of the assured; and that the later English cases which have declared a different rule are in opposition to the better settled principles of the law of that kingdom also. It is conceded that the case of Hale v. Washington Ins. Co. [Case No. 5,916] is in consonance with the recent decisions in England, and applies the case of Peters v. Warren Ins. Co. [supra] to a class of facts entirely analogous to those stated in the declaration in this case and, by the demurrers, admitted to be true. But it has been most strenuously insisted, that the decision of the supreme court in no way sanctions the principles adopted by Judge Story and claimed by the plaintiff in this suit. It is true the case before the supreme court arose out of a collision which happened through accident or mutual fault. That circumstance was recognized by the Hamburg tribunal as the ground for compelling a mutual contribution by the colliding vessels. But the judgment of the supreme court was in no respect governed by that circumstance. It is placed upon a broader consideration; one which may be fairly regarded as embracing every loss not barratrous. It adjudged the damages sustained by the injured vessel to be the direct and immediate consequence of the collision, and no less so in being imposed by judgment of law on the insured vessel, than if they had accrued to her bodily by the collision.

The case did not demand the judgment of the court upon the particular point here relied upon by the defence, and no direct opinion was expressed in respect to the influence or effect of proving negligent or blamable conduct in those managing the insured vessel. But it is manifest that the fact, if it existed, would in no way have influenced the decision; because the court express their dissatisfaction, in toto, with the decision of the queen's bench in England, in De Vaux v. Salvador, 4 Adol. & E. 420, and a prominent ingredient in that case was one of fault on both sides. The distinction would not have escaped notice, had the supreme court considered the absence or presence of negligence or fault tending to produce the loss, as varying at all the principle adopted and adjudged in the case. We accordingly think the spirit of the decision in Peters v. Warren Ins. Co. [supra] well warranted the conclusion drawn from it and applied in Hale v. Washington Ins. Co. [supra], and that full authority is furnished by these cases to support the present action.

But, furthermore, we regard the point as in effect determined by the supreme court, by repeated decisions antecedent to the case of Peters v. Warren Ins. Co., and that, accordingly, that case proceeded upon a principle which had become the settled law of the court. The rule, after the most ample examination of American and European authorities, had been deliberately declared and established, that underwriters are liable for a loss arising directly out of a peril insured against, although the negligence or misconduct of persons in charge of the property insured, may have occasioned the loss. Patapsco Ins. Co. v. Coulter, 3 Pet. [28 U. S.] 222. That was a marine policy. The same doctrine was reiterated in Columbia Ins. Co. v. Lawrence, 10 Pet. [35 U. S.] 507, which was a fire policy on real property. The principle is repeated with increased emphasis in Waters v. Merchants' Louisville Ins. Co., 11 Pet. [36 U. S.] 213.

These principles have now been incorporated into the jurisprudence of many of the individual states. Henderson v. Western Marine & Fire Ins. Co., 10 Rob. (La.) 164; Copeland v. New England Marine Ins. Co., 2 Metc. [Mass.] 432; Perrin v. Protection Ins. Co., 11 Ohio, 147. In the last two cases cited, the courts have retracted or qualified the doctrine previously governing their decisions, in order to conform to the judgment of the supreme court, and render a principle of law of such extensive and important influence uniform throughout the United States, corresponding with the rule now definitely established in England. Busk v. Royal Exch. Assur. Co., 2 Barn. & Ald. 73; Walker v. Maitland, 5 Barn. & Ald. 171; Bishop v. Pentland, 7 Barn. & C. 219; Shore v. Bentall, Id. 798, note b; Dixon v. Sadler, 5 Mees. & W. 405, and s. c. (in error) 8 Mees. & W. 895.

The counsel for the defendant contend that the principles settled by these strong cases, have relation, at least in the United States courts, to fire policies, and that policies covering sea risks are to be construed and enforced on different considerations. It is sufficient to observe that the cases in no instance note that fact as affording a different liability or right, or calling for a different rule of interpretation. On the contrary it would seem that the liability of assurers, notwithstanding the loss was occasioned by the fault or negligence of the assured, was first established in cases of sea risks proper, and was subsequently applied, because of its justness and the plain purpose of the contract, to fire risks at sea and on land. Copeland v. New England Marine Ins. Co., 2 Metc. [Mass.] 432; Busk v. Royal Exch. Assur. Co., 2 Barn. & Ald. 73; Columbia Ins. Co. v. Lawrence, 10 Pet. [35 U. S.] 507; Waters v. Merchants' Louisville Ins. Co., 11 Pet. [36 U. S.] 213.

In our opinion, it is now incontrovertibly established, by the authority of the highest court of the land, that the defendants would be liable under this policy, on the facts stated in the declaration, for the damage directly received by the Emily in the collision, although produced by the negligence or misconduct of her crew. It would be one of that class of losses which ship owners would have most reason to apprehend, and, accordingly, seek first to be guaranteed against. The inattention, care-

lessness and faults of mariners, must invariably enter, more or less, into every damage and loss sustained by a ship on her voyage. In the present case the blamable absence of the lookout for a few moments, a mistaken manœuvre of the vessel insured, or a wrong order given by an officer on deck, produced the collision, and was the cause for which the colliding ship was charged with the damages inflicted on another. But, most assuredly, these facts could not affect her right to protection by the underwriters against the direct injury received by her also, by the act of collision. It would be taking away from a policy all its essential properties of an indemnity against perils of the sea, if such circumstances connected with a peril, discharged the assurer from liability to the assured. The courts, in the opinions pronounced, have adverted to this consequence of that doctrine and strongly repudiated it. The primary responsibility of the underwriters for the direct injury to the Emily being then unquestionable, the case of Peters v. Warren Ins. Co. supplies all the authority required, for including within the indemnity, as part and parcel of the loss, the damages decreed against the insured vessel, and which she was compelled to bear because of such collision.

A decree must accordingly be entered overruling the demurrers.

After this decision an inquest was taken, and the question arose whether the defendants were liable for counsel fees paid by the plaintiff to advocates in the suit against the Emily, amounting to $450, beyond taxable costs. The defendants had notice from time to time of all the proceedings in that suit. After its termination the plaintiff, under the advice of counsel, settled the claims against the Emily by paying a sum in full satisfaction, each party paying his own costs. The sum paid was considerably less than principal and interest on the decree. There was a clause in the policy in this suit as follows: "And in case of any loss or misfortune it shall be lawful and necessary to and for the assured to sue, labor and travel for, in, and about the defence, safeguard and recovery of the said vessel or any part thereof, without prejudice to this insurance, to the charges whereof the said insurance company will contribute, according to the rate and quantity of the sum herein insured."

THE COURT held that the case was one of indemnity, that the defence against the libel was for the benefit of the insurance company, and that the counsel fees ought to be allowed.

[NOTE. Upon the rendering of the judgment in favor of the plaintiff upon the demurrer the defendants did not interpose any other answer to the two special counts, but to the common counts (3, 4, 5, and 6) they pleaded the general issue. The cause was then tried by jury, and verdict entered for the plaintiff for $4,536.34. Upon a writ of error, the judgment of the circuit court was reversed and the cause remanded, with directions to enter a judgment for the defendants on the demurrer to the first two counts and award a venire facias de novo to try the general issue pleaded to the other counts. 14 How. (55 U. S.) 351.]